# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 15, 2012 Session

## ROBERT ERIC COLLINS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hawkins County**
**No. 08CR0032      Thomas Wright, Judge**

---

**No. E2011-01758-CCA-R3-PC-FILED-OCTOBER 5, 2012**

---

The Petitioner, Robert Eric Collins, appeals from the Hawkins County Criminal Court's denial of post-conviction relief from his two guilty plea convictions for possession with intent to deliver a controlled substance, Class C felonies, and his effective three-year community corrections sentence. On appeal, the Petitioner contends that counsel provided ineffective assistance by (1) failing to advise him properly of potential conflicts of interest and (2) forcing him to plead guilty by telling him that he could not receive a fair trial in Hawkins County. We affirm the judgement of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Wayne R. Stambaugh, Morristown, Tennessee, for the appellant, Robert Eric Collins.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Alex Pearson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner was indicted for possession with the intent to deliver 274 tablets of Oxycodone, a Schedule II controlled substance, and possession with the intent to deliver 108 tablets of Dihydrocodeinone, a Schedule III controlled substance. On November 24, 2008, the Petitioner pleaded guilty to both offenses for an effective three-year sentence and requested judicial diversion, which the trial court granted and ordered six months' house arrest. The Petitioner failed to disclose a disqualifying felony conviction, and as a result, the plea was set aside. On April 14, 2009, the court entered an order stating that "there was no

plea agreement and that the case would proceed to trial or be resolved by a plea to the indictment without any agreement for a reduction or specific sentence." On July 30, 2009, the Petitioner pleaded guilty to the same offenses and received an effective three-year sentence to be served on community corrections.[1]

On May 28, 2010, the Petitioner filed a petition for post-conviction relief contending that he received the ineffective assistance of counsel because of counsel's dual representation of him and his wife and because counsel commented on the Petitioner's inability to receive a fair trial because of his race and interracial marriage. He argued counsel's comments forced him to plead guilty.

At the post-conviction hearing, counsel testified that the Petitioner made an appointment to meet with him after the Petitioner and his wife, Rita Collins, were indicted. He said the Petitioner discussed counsel's representing the Petitioner and Mrs. Collins and the circumstances of their charges. The Petitioner told counsel that the police found Oxycontin tablets belonging to his wife during a search of their car. The Petitioner also told him that a third person in the car was charged.

Counsel testified that after his initial visit with the Petitioner, the Petitioner stated that counsel had been "highly recommended as a criminal defense attorney . . . and that they were going to hire [him]." Counsel quoted the Petitioner a fee for handling both cases, and the Petitioner paid a portion of the fee. When asked if he discussed with the Petitioner and Mrs. Collins that there might be a potential conflict of interest, counsel said that he told them, "[Y]ou're husband and wife, and that sometimes means that, you know, if you're not saying she did anything, and she's not saying you did anything or anything of that nature . . . I just went over the conflictual process." Counsel said that his practice was to handwrite something and have the client sign it but that he could not find such a document in his file. He recalled telling the Petitioner and Mrs. Collins that he did not see any potential conflict. He said he thought he had them sign a statement waiving any potential conflict of interest, but he could not find it and questioned if it was done in this case. He recalled, though, reviewing "it in great detail with them verbally."

Counsel testified that he received Mrs. Collins's statement in the State's discovery package and that Mrs. Collins told the police the Petitioner sold her Oxycontin tablets to Charles Gilbert, the second co-defendant. The record shows that Mrs. Collins told the police the instant offense was the third time she went with her husband to sell the pills, that the Petitioner took the money and put it in her purse, and that the Petitioner counted the pills and

---

[1] We note that although the court entered a separate order of alternative sentencing, the judgments fail to refer to the order or to reflect the court's ordering community corrections.

gave the pills to her when a police officer approached the car, causing her to drop the pills on the seat.

Counsel testified that after he received Mrs. Collins's statement, he talked to both of them concerning potential conflicts of interest. He said that he told them a potential conflict existed and that the Petitioner responded that "we've got to keep her out of jail." He said the Petitioner stated that he did not want his wife going to jail and that although the Petitioner did not want to go to jail, he would go to jail if he had to. He said the Petitioner stated, "I cannot have my wife going to jail; she can't make it in jail." Counsel recalled that Mrs. Collins had been involved in a serious accident years earlier and was in "constant pain, chronic pain." He said he promised the Petitioner that he would do everything he could to keep Mrs. Collins from going to jail. He denied the Petitioner stated he was guilty of a crime.

Counsel testified that he discussed with the Petitioner and Mrs. Collins the potential conflict that could arise if the case went to trial. He said he discussed the State's calling Mrs. Collins as a witness against the Petitioner and calling the Petitioner as a witness against Mrs. Collins. He said that during this discussion, Mrs. Collins stated that she did not want to go to trial. He said that he talked to the Petitioner and Mrs. Collins about the potential conflict and that they wanted counsel to represent them. He said the Petitioner and Mrs. Collins did not want another attorney. He said he successfully obtained judicial diversion for Mrs. Collins.

Counsel testified that he filed a motion in the Petitioner's case to suppress Mrs. Collins's statement and the products of the search of the Petitioner's car. He said he argued that Mrs. Collins was heavily medicated at the time of the stop and "incompetent due to the effect of her prescribed medication and deteriorating mental state." He said a court's granting the motion would not have threatened Mrs. Collins's case and would have helped the Petitioner's case. He did not recall the Petitioner's telling him that he believed Mrs. Collins was intoxicated at the time of the suppression hearing.

Counsel testified that he and the Petitioner discussed the evidence in the case and that the police officers found "a lot of pills." He said that he rarely saw such a large quantity of pills and that he was unsure how a jury would react to the large quantity. He did not recall the Petitioner's stating whether the pills belonged to him but recalled there was a discrepancy in the number of "pills per prescription" and the number of pills found in the car. He said that after the trial court ruled on the motion, he advised the Petitioner to accept the plea offer.

Counsel testified that the Petitioner pleaded guilty on November 24, 2008, and received judicial diversion. Counsel said that the Petitioner did not tell him before the diversion hearing that he wanted a trial instead of pleading guilty. He said that the Petitioner asked if counsel thought they should go to trial and that he talked "ad nauseam" about it with the Petitioner. He said that he asked for a continuance at one of the scheduled hearings to discuss the Petitioner's pleading guilty or going to trial but that the trial court told him they were going to select a trial date or the Petitioner was going to plead guilty. He said he advised the Petitioner that there was a high likelihood of conviction if he went to trial.

Counsel testified that he got "in a pickle somewhat" because the Petitioner told him about the activities that led to the charges in the case. He said the Petitioner admitted that there was "a transfer of pills going on" because the buyer "was hurting . . . and they were helping him out." He said he worried that an ethical problem could arise if the Petitioner testified at a trial that "there was nothing going on, on top of that mountain[.]" He told the Petitioner, "[H]ow about if we just -- get to -- look, you'[ll] -- plead guilty and we'll . . . go through the process of a hearing for judicial diversion." He said that he spent a lot of time with the Petitioner, that he thought they were friends, and that he advised the Petitioner that he would be "much better off by taking this plea." He said he told the Petitioner that he did not know if he could call the Petitioner as witness at a trial and that he did not know if any of his defenses would be successful. He said that after this discussion, the Petitioner said, "[Mrs. Collins] is safe, she's not going to jail," and pleaded guilty. The trial court granted the Petitioner's judicial diversion request.

Counsel testified that he and the Petitioner did not have heated arguments on the day of the plea. He said that the Petitioner had "a forceful personality" but that he never cursed or yelled at the Petitioner. He agreed the Petitioner "may have gotten a little agitated" when deciding whether to plead guilty. He said he told the Petitioner that he could receive a prison sentence if he lost at a trial and that he had a better chance of staying out of prison by "having this hearing and . . . getting up and . . . saying a few things and doing the right thing here than . . . with going to trial." He said he told the Petitioner that he thought there were things that would hurt him at trial, and the Petitioner said, "I trust you," and pleaded guilty. He said that he explained a best interest plea to the Petitioner but that the trial court might look favorably on the Petitioner if he admitted guilt and accepted responsibility. He said "it worked" because the Petitioner received diversion.

Counsel testified that at the first guilty plea hearing, the trial court discussed whether the Petitioner and Mrs. Collins thought counsel had any conflicts of interest due to counsel's representing them. The court conducted "detailed questioning . . . about whether or not anybody saw conflict here[.]"

Counsel testified that after the Petitioner received diversion, the Petitioner's community corrections officer learned that the Petitioner had a previous felony conviction involving marijuana, which disqualified him from judicial diversion. The State filed a motion to set aside the judicial diversion. Counsel said that when he discussed this with the Petitioner, the Petitioner "got upset . . . [and] started saying this is a racial thing." He said the Petitioner stated that the State was "after [him]" because he was "a black man . . . married to a white woman." He said the Petitioner was "a different" person that day.

Counsel testified that he thought the State would not offer the Petitioner another deal and that the Petitioner would have to go to trial. He recalled that the prosecutor was "upset and . . . thinking about filing perjury charges" but that the prosecutor offered the Petitioner a three-year sentence. He said the Petitioner pleaded guilty again. He said that at the sentencing hearing, he cross-examined the Petitioner's community corrections officer, who testified that the Petitioner was "a perfect probationer" while on community corrections and did everything required of him. He said that the trial court ordered the Petitioner to serve his sentence on community corrections and that the only difference in sentencing was that the convictions could not be expunged from his record.

Counsel testified that he thought he could have represented the Petitioner if the case went to a trial. He said he talked to the Petitioner about potential racial issues with respect to a jury trial. He said he told the Petitioner that "most of the time . . . we have black members of jury panels . . . [because] there's a sizable black population in Hawkins County." He did not think the Petitioner's race would have prevented a fair trial in Hawkins County. He said he told the Petitioner that there were complicated constitutional issues about race that would have to be discussed if there was a trial but that the Petitioner could receive a fair trial.

The Petitioner testified that because counsel had the reputation of being "a good counselor," he and his wife discussed the indictments with counsel. The Petitioner recalled that he told counsel, "I don't want you to look at me as, you know, as black. I just wanted to get treated like the rest[.]" He said that counsel never talked to him and Mrs. Collins about there being a potential conflict of interest by representing both of them. He said that he did not learn of Mrs. Collins's statement until one year later. He said Mrs. Collins was medicated and "didn't even know she was in the world" at the suppression hearing. He said counsel knew of Mrs. Collins's condition at the hearing.

The Petitioner testified that he told counsel he wanted a trial but that counsel "just didn't want [him] to go to trial." He said counsel told him that he would not get a fair trial because he was black and that the jurors would be "a bunch of hillbillies and rednecks" who would not like that he was married to a white woman. He said that he and counsel argued

about going to trial the last time they were together and that counsel became so upset he slammed down his papers. He said that he threatened to hire another attorney on at least three occasions but that every time he mentioned it, counsel said, "Oh, no, no, no. I've got everything took care of." He said he decided to plead guilty "[b]ecause [he] was told [he] wouldn't get a fair trial." He said the trial court's asking him if he was satisfied with his attorney at the guilty plea hearing was the hardest question for him to answer, which was why he hesitated before responding.

The Petitioner testified that he applied for judicial diversion and thought that he and counsel discussed his prior convictions. He said he did not remember "his having a prior record because it happened "30 years back -- 20 or 30" and "figured the statute of limitations had run out or something." He said, "It had actually slipped my mind myself, you know, 20-30 -- 25-30 year[s] ago." When asked if he served time in jail on the prior offense, the Petitioner said, "I've been in jail before. I'm trying to think. I may have. Yeah, I guess I did. Yeah, I've been in jail before." He stated that when the trial court reviewed the requirements for judicial diversion, he did not reveal that he had a prior conviction because he "didn't remember something, you know, 25-30 year[s] ago, 40 or however many years it was." He said he "ended up in the hospital . . . and . . . forgot a lot then." He denied failing to tell the court about his conviction because he did not want the court to find out about it.

The Petitioner testified that the trial court "mentioned a lot about conflict of interest" at his plea hearing. He acknowledged that he understood what the court asked him and felt comfortable entering his plea.

The Petitioner testified that the reason for the large quantity of pills inside the car was because Mrs. Collins had just been released from the hospital. He stated that the pharmacy was out of the prescribed dosage of Roxicodone and that "they had to break the 30's down and give her 15's." He said that Mrs. Collins was prescribed two pills, five times a day and that she was also prescribed 120 hydrocodone pills.

Charles Gilbert testified that he and the Petitioner were friends and that he was arrested with the Petitioner and Mrs. Collins. He said he saw the Petitioner and counsel speak once or twice. He recalled an occasion when the Petitioner was irritated and upset and noted neither shouted but that "[t]hey were just like highly concerned[.]" He said he gave a statement to the police that did not incriminate the Petitioner or Mrs. Collins. He agreed that he told the police he did not know anything about the drugs in the car and that he pleaded guilty to a misdemeanor drug offense.

The trial court noted that at the initial plea hearing, it explained in detail to the Petitioner and Mrs. Collins that there was a potential conflict of interest with counsel representing the Petitioner and Mrs. Collins but that because of their primary goal of keeping Mrs. Collins out of jail, "there wasn't an actual conflict." The court found that the Petitioner and Mrs. Collins "were in agreement of what ought to happen" and that counsel was hired to fulfill that objective. The court found that the

> goal was fulfilled because of the skillful lawyering of [counsel] in convincing, first, the district attorney's office to reduce her charges to misdemeanors and, secondly, convincing me to put her on a judicial diversion. And then, even more, I guess the bigger leap would have been convincing me to put [the Petitioner] on judicial diversion before we knew [he] had a prior felony conviction.

The court noted that the Petitioner "couldn't have just waltzed in here by [himself] and gotten that result." Instead, the court found that the result was obtained because the Petitioner "hir[ed] somebody that had 25 years of experience, that had a great relation with the District Attorney's Office, and knew what would be important to bring out, in arguing for those types of alternative sentencings[.]" The court found that the potential conflict of interest with counsel representing the Petitioner and Mrs. Collins did not adversely affect the voluntariness of the plea on November 24, 2008, or on July 30, 2009. The court found that at the plea hearing, the Petitioner assured the court that his plea was voluntary and that he had no complaints about counsel's services.

The trial court noted that the only fault with counsel was his maintaining his paperwork for having the Petitioner and Mrs. Collins sign a waiver of any potential conflict of interest. The court acknowledged that having clients sign a waiver was something criminal defense lawyers were supposed to do, "[s]o [counsel] either did a bad job of maintaining his file or he omitted doing something that he should have done[.]" The court concluded, though, this failure did not prejudice the Petitioner.

The trial court stated that "it's somewhat amazing that [it] granted the community corrections on the second go-round after [it] found out that [the Petitioner] had a prior felony drug offense." The court found that "it stretches the credulity of the Court to believe that somebody doesn't remember going to jail in their past, whether it's five years or 30 years ago. That's just not something that's, unless it's a common occurrence . . . , that anybody ever tends to forget."

The trial court found that counsel was not deficient and was "dead-bang on target" in his advice that the Petitioner had a better chance of avoiding jail time by pleading guilty rather than going to trial and likely getting convicted. The court noted that had the case gone to trial, Mrs. Collins would have probably been required to testify about her prior statement related to the Petitioner's selling pills to Mr. Gilbert. The court stated that "whether you are black or white, you're going to get convicted in that situation, nine times out of ten. And that's what he was telling you, and he was right. And you were right to accept his advice." The court said counsel probably did what any good lawyer would do by pointing out that race could be a factor with certain members of the jury panel, but it refused to accredit the Petitioner's testimony that counsel told him he would not receive a fair trial because of his race. The court stated that it was the Petitioner's "hindsight" that led him to believe that counsel told him he would not receive a fair trial but found that race did not motivate the Petitioner to plead guilty.

With regard to the potential conflict of interest, the trial court found that the Petitioner "was well aware of the potential conflict of interest in [counsel]'s representation of both [him] and his wife" but that an actual conflict of interest did not exist because the primary goal of both parties was to prevent Mrs. Collins from going to jail. The court found that the secondary goal of keeping the Petitioner from going to jail was also achieved. The court concluded that counsel's loyalty to the Petitioner and his wife "was not divided as they were in agreement on the goal of his representation. No conflict of interest, actual or potential, affected the voluntariness of [the Petitioner's] plea of guilty."

With regard to the Petitioner's receiving a fair trial in Hawkins County, the trial court found that counsel did not make the statement to the Petitioner and that counsel's testimony was significantly more credible than that of the Petitioner. The court stated that the Petitioner "either ha[d] significant memory lapses or veracity issues," considering he did not recall a previous felony drug conviction or the court's discussion about the potential conflict of interest at the first plea hearing. This appeal followed.

**I**

The Petitioner contends that counsel provided the ineffective assistance of counsel by failing to advise him properly of any potential conflict in counsel's joint representation of him and Mrs. Collins. The State contends that the trial court properly concluded that counsel did not render ineffective assistance and argues that counsel informed the Petitioner of the potential conflict of interest. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we

are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

"[A]n actual conflict of interest includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties.'" State v. White, 114 S.W.3d 469, 476 (Tenn. 2003) (quoting State v. Culbreath, 30 S.W.3d 309, 312-13 (Tenn. 2000) (quoting Tenn. R. Sup. Ct. 8, EC 5-1)). "The proper focus is solely upon whether counsel's conflict affected counsel's actions and the [petitioner]'s decision." Netters v. State, 957 S.W.2d 844, 848 (Tenn. Crim. App. 1997).

Prejudice is presumed in cases in which a petitioner can establish that his trial counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected [counsel's] performance.'" Strickland, 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). However, unless the petitioner proves that trial counsel was burdened by an actual conflict of interest, he must establish that trial counsel's performance was deficient and that he was prejudiced by this deficiency. Strickland, 466 U.S. at 692.

Counsel testified that he discussed in detail the possibility of a conflict of interest with the Petitioner and his wife. Although counsel was unable to find in his records a document signed by the Petitioner and Mrs. Collins reflecting that counsel discussed potential conflicts of interest, counsel thought they signed a statement waiving potential conflicts of interest. Counsel stated that after discussing conflicts of interest, the Petitioner and his wife said that they wanted him to continue representing them. Counsel said the Petitioner's primary concern was to keep Mrs. Collins from going to jail. The trial court accredited counsel's testimony. The record shows that at the November 24, 2008 guilty plea hearing, the trial court thoroughly discussed the potential conflicts of interest, and the Petitioner told the court that he was satisfied with his and his wife's having one attorney. We conclude that the Petitioner has failed to show that counsel was deficient or that an actual conflict of interest arose.

## II

The Petitioner contends that counsel provided ineffective assistance by forcing him to plead guilty by telling him that he could not receive a fair trial in Hawkins County because he was African-American and his wife was Caucasian. He argues that counsel should have filed a motion for a change of venue. The State contends counsel provided effective assistance and argues that the trial court properly found counsel did not tell the Petitioner that he could not receive a fair trial.

Counsel testified that he discussed the potential racial issues with the Petitioner. Counsel told the Petitioner that if they went to trial, there were complicated constitutional issues related to race that they would have to discuss but that he believed Petitioner could receive a fair trial. The trial court accredited counsel's testimony and found counsel did what any good lawyer would do by pointing out that race could be a factor with certain members of the jury panel. The court refused to accredit the Petitioner's testimony that counsel told him that he could not receive a fair trial because of his race. The court found that "hindsight" led the Petitioner to believe counsel told him he would not receive a fair trial but did not motivate his pleading guilty. We conclude that the record does not preponderate against the trial court's findings and that the Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE